[Docket No. 1]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| JUANITA BELTRAN REYES, on behalf of L.A. | |
| Plaintiff, | Civil No. 07-1972 (RMB) |
| v. | |
| | **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, MICHAEL J. ASTRUE, | |
| Defendant. | |

APPEARANCES:

Robert Anthony Petruzelli, Esq.
Jacobs, Schwalbe & Petruzelli, PC
Woodcrest Pavilion
Ten Melrose Avenue, Suite 340
Cherry Hill, NJ 08003
    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
    By: Marla Piazza Siegel
        Special Assistant U.S. Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorney for Defendant


**BUMB**, United States District Judge:

I.   **INTRODUCTION**

    Juanita Beltran Reyes ("Plaintiff") brings this appeal on

behalf of her minor son, L.A., seeking judicial review of the

1

final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  This Court has jurisdiction over the instant matter pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the provisions of 42 U.S.C. § 405(g).  For the reasons set forth below, this Court will remand the Commissioner's decision for further proceedings.

## II.  BACKGROUND

### A.  Procedural Background

On September 7, 2004, Plaintiff filed an application for SSI on behalf of her son, L.A., alleging a disability beginning September 23, 2000.  (Administrative Record ("R.") at 80-82). The claim was denied initially and upon reconsideration.  (R. at 30-35, 40-43). Plaintiff filed a timely written request for hearing on March 3, 2005.  (R. at 44-45).  A hearing was held before Administrative Law Judge Mark G. Barrett ("ALJ") on March 8, 2006, in Voorhees, New Jersey, where both Plaintiff and L.A. testified.  (R. at 606-34).  On May 26, 2006, the ALJ issued a decision denying Plaintiff's claim.  (ALJ Opinion, R. at 10-25). Plaintiff then filed an appeal of the ALJ's decision to the Appeals Council.  The Appeals Council denied the appeal on February 23, 2007, which became the final decision of the

Commissioner.  (R. at 6-8).  On April 26, 2007, Plaintiff filed the above-captioned action in this Court seeking review of the Commissioner's decision.

### B.  Factual Background[1]

#### 1.  Medical History, Condition and Treatment

L.A. was born on September 23, 2000.  At the time of the administrative hearing, L.A. was five years of age and a kindergarten student at the Dudley School, where he was enrolled in a special education program.  (R. at 614, 626).  He suffers from a multitude of physical and developmental conditions, including asthma, gastroesophageal ("GE") reflux, ear infections, orthopedic issues, various allergies, ADHD, and Pervasive Developmental Disorder.

#### a.  Asthma

In December 2000, L.A. was diagnosed with bronchiditis after receiving treatment at the Cooper Hospital ER.  A review of L.A.'s health in July 2001 (as documented by Dr. Soroush, a consulting physician) stated that L.A. experienced his first asthma attack at 2 months of age and had six recurrent attacks thereafter.  (R. at 239).  L.A. was diagnosed with Moderate

---

[1] The record contains extensive documentation of L.A.'s medical condition and the Court need not recite every detail in this factual summary.  To the extent this Opinion relies on any evidence in the record that is not summarized in this background section, the Court cites such evidence specifically in the discussion below.

Persistent Asthma and was frequently seen for upper respiratory infections and related complications at the Cooper Hospital ER and Pulmonary Clinic.  (R. at 383, 426, 521-538).  Additionally, in September 2005, L.A. suffered asthma exacerbation and was taken out of school for five days at the request of his treating pulmonologist, Dr. Vatsala Ramprasad.  (R. at 585).  He has been prescribed Xopenex PRN, Pulmicort BID, and Singular to manage his asthma.  (R. at 131).

### b.  GE Reflux

The record indicates that L.A. initially had trouble tolerating baby formula.  (R. at 239).  A barium swallow and upper gastrointestinal study performed on June 29, 2001 revealed that L.A. suffered from severe gastroesophageal ("GE") reflux.  (Tr. at 538).  However, this condition improved with treatment. Follow up evaluations indicated that L.A. was doing well, that his milk allergy was resolved, and that his Zantac dosage should be tapered.  (R. at 293).  Notwithstanding L.A.'s improvement, in November 2003, a consulting physician from the Cooper Pediatric Pulmonology Clinic recommended that L.A. undergo a gastrointestinal reevaluation.  (R. at 527).  The record does not show whether L.A. was in fact reevaluated.

### c.  Ear Infections

L.A. has had a history of ear infections for which he has received extensive treatment.  A review of L.A.'s health in July

4

2001 (as documented by Dr. Alvarez, a consulting physician) revealed that L.A. had eight episodes of otitis media (infection and inflammation of the middle ear) during his first nine months. (R. at 306).  In October 2001, L.A. had a bilateral myringotomy to place drainage tubes in each ear.  (R. at 303).  Exams conducted in June and September 2002 revealed that L.A. was doing well post-surgery, though he did have frequent throat infections. (R. at 300, 301).  Additionally, due to concerns that his ear problems might affect his speech, L.A. underwent speech development evaluations in late 2002.  (R. at 300).

L.A.'s ear infections reemerged in early 2003.  (R. at 340). Dr. Deutsch, who treated L.A. from March 2003 to September 2004, noted that L.A. had a history of hearing loss "which is probably secondary to ear infection" and that L.A. frequently presented with upper respiratory infections and ear pain.  (R. at 340, 483).  Dr. Deutsch planned a left tympanostomy and removal of the tube for September 2004.  (R. at 484).  However, there are no records that indicate whether this procedure went forward or what type of treatment L.A. needed for this condition.

### d.  Orthopedic Issues

L.A. has also suffered from a host of orthopedic issues, which have affected his physical stability and caused him pain. Records from the ER and Cooper Pediatrics document numerous injuries related to him falling down.  (R. at 250, 423, 462).  On

5

October 18, 2002, L.A. was evaluated by consulting physician Dr. Wetzler at Jersey Orthopedic Associates.  (R. at 320).  L.A.'s physical exam revealed excessive femoral anteversion with increased internal rotation of both hips.  Although Dr. Wetzler suggested orthopedic shoes for L.A., he noted that such treatment was "not necessary" as L.A. was expected to grow out of this problem.  (Id.).  During a reexamination on March 5, 2003, Dr. Wetzler found that L.A.'s left foot "in-toe[d] slightly" and suggested that L.A. see a podiatrist concerning a potential wart on his right foot.  (R. at 319).

On December 12, 2005, L.A. underwent a neurological evaluation at Children's Hospital of Philadelphia to assess his orthopedic condition.  (R. at 588).  The consultation report noted "that he had been falling for a long time, almost as if his toddler gait has never really improved."  The review also indicated that L.A. complained of pain in his right hamstring, bilateral lower back, and buttocks.  (Id.).  The Pediatric Nurse Practioner concluded that although there were reports of frequent falling, "that was not our finding today."  (Id.).  Finding L.A. to be "a bit hyperreflexic from mildly increased tone" with "significant intoeing," the nurse recommended an MRI of L.A.'s brain and spinal cord, as well as physical therapy to increase tone and endurance.  (Id.).  The MRI of the brain and spine was conducted on December 30, 2005; it revealed that L.A. suffered

6

from paranasal sinus disease, but was otherwise unremarkable.
(R. at 597).

### e.  Psychiatric Treatment

In 2004, L.A. was diagnosed with Pervasive Developmental
Disorder.  (R. at 599).  The sparse psychiatric progress notes
from the Nueva Vida Behavioral Health Center, where L.A. has been
treated since May 2004, indicate that L.A. is anxious,
hyperactive, disruptive, and irritable.  (R. at 570).  He has
been prescribed Adderall for this condition, although his
psychiatrist has noted his poor compliance with the medication.
(R. at 570, 573).

### 2. School Records

According to school records, L.A. has had consistent delays
in his educational development.  He began receiving special
services from the Step by Step Early Intervention Program in
September 2002, after an evaluation revealed a 25% delay in his
communication and early learning skills.  (R. at 296).  He was
also deemed eligible for occupational therapy due to his sensory
problems related to eating, sleeping, and coping with
environmental challenges.  (R. at 331).

On December 9, 2003, L.A. underwent a pre-school learning
evaluation to determine the course of his transition from the
early intervention program into the Camden County School
District.  The Individualized Education Plan ("IEP") for 2003-04

7

recommended that L.A. be placed in Preschool Disabilities in a self-contained classroom with speech, physical, and occupational therapy.  (R. at 489).  The IEP team noted that L.A. appeared to be a multi-sensory and concrete learner who needed a variety of hands-on activities in order to learn effectively.  (Id.).

The IEP for 2005-06, the most recent evaluation, documented L.A.'s progress.  According to his speech, occupational, and physical therapists, he had made significant strides in all areas.  (R. at 161, 173, 174).  The teacher evaluation stated that L.A. was "a pleasure to have in class" and that despite his low academic skills he demonstrated great effort.  (R. at 159).  However, the teacher also noted that L.A. was frequently absent due to illness.  (Id.).  Test scores revealed that his overall intelligence was in the low-average range and that he may have difficulty reading.  (Id.).  Based on these evaluations, the IEP team recommended an extended school year program to prevent regression, as well as continued services for speech and occupational therapy.  (R. at 160, 179).  Also, due to L.A.'s age-appropriate gross motor skills, the IEP team determined that he no longer needed school-based physical therapy.  (R. at 173).

### 3.  Testimony before the ALJ

At the hearing, Plaintiff spoke at length about the impact and severity of her son's impairments.  When asked if any of L.A.'s physical conditions cause him pain, Plaintiff testified

that L.A. is bothered "a great deal" by his reflux, has pain in his legs and back, and has difficultly sleeping.  (R. at 616, 617, 630).  She estimated that he wakes up three to four times per night, often crying and coughing due to congestion and leg cramping.  (Id.).  Plaintiff also indicated that L.A.'s medications cause various side effects — Zyrtec causes him to be drowsy, which makes him more aggressive because he does not want to sleep, and Adderall makes him sad.  (R. at 619).

Additionally, Plaintiff testified that she regularly struggles with L.A.'s hyperactivity and aggressiveness.  She stated that L.A. spends "the entire day ... yelling and screaming," nothing holds his attention for more than ten minutes, he is violent towards his siblings, and she must constantly discipline and devote all of her attention to him. (R. at 628).  Furthermore, he has engaged in self injurious behavior, such as occasionally hitting himself against the wall and picking at the skin on his fingers and feet until they bleed. (R. at 629).  As a result of these behavioral issues, a family friend is the only person who will agree to watch him in her absence.  (R. at 628).

L.A. also testified briefly at the hearing.  (R. at 631-33). When questioned by the ALJ, L.A. answered that he was five years old and that he attended school at Dudley (R. at 631).  As to school, L.A. said he liked gym the best because he gets to play

9

games and run races, but that "dull work," such as sitting and
writing at his desk, is his least favorite school activity.  (R.
at 632).


III.  **STANDARD OF REVIEW**

When reviewing a final decision of the Social Security
Commissioner, the Court must uphold the Commissioner's factual
decisions if they are supported by "substantial evidence."  42
U.S.C. §§405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83,
(3d. Cir. 2000).  This means, "'more than a mere scintilla.  It
means such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion.'"  Richardson v. Perales, 402
U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB,
305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427
(3d Cir. 1999).  Where the ALJ's findings of fact are supported
by substantial evidence, this Court is bound by the findings
"even if [it] would have decided the factual inquiry
differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.
2001); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).
Thus, this Court must "review the evidence in its totality, but
where it is susceptible of more than one rational interpretation,
the Commissioner's conclusion must be upheld."  Ahearn v.
Commissioner of Social Sec., 165 Fed. Appx. 212, 215 (3d Cir.
2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984);

10

<u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

The Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." <u>Ogden v. Bowen</u>, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing <u>Brewster v. Heckler</u>, 786 F.2d 581 (3d Cir. 1986)). Access to the Commissioner's reasoning is essential to meaningful court review:

> [u]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the Court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted); <u>see also</u> <u>Guerrero v. Commissioner of Social Sec.</u>, 2006 WL 1722356 at *3 (D.N.J. 2006) (stating that is the ALJ's responsibility "to analyze all the evidence and to provide adequate explanations when disregarding portions of it") (internal citation omitted).

While the ALJ must review and consider pertinent medical evidence, review all non-medical evidence, and "explain [any] conciliations and rejections," <u>Burnett v. Commissioner of Social Sec.</u>, 220 F.3d 112, 122 (3d Cir. 2000), "[t]here is no requirement that the ALJ discuss in [his] opinion every tidbit of evidence included in the record." <u>Hur v. Barnhart</u>, 94 Fed. Appx. 130, 133 (3d Cir. 2004); <u>see also</u> <u>Fargnoli v. Halter</u>, 247 F.3d

34, 42 (3d Cir. 2001) ("[a]lthough we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant ... has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law").  Overall, the Court must set aside the Commissioner's decision if the Commissioner did not take the entire record into account or failed to resolve evidentiary conflict.  Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Mathews, 574 F.2d 772, 776 (3d Cir. 1978)).

In addition to the substantial evidence inquiry, this Court must review whether the administrative determination was made upon application of the correct legal standards.  Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983).  This Court's review of legal issues is plenary.  Sykes, 228 F.3d at 262; Schaudeck v. Commissioner of Social Sec., 181 F.3d 429, 431 (3d Cir. 1999).

## IV.  DISCUSSION

### A.  Defining "Disability" for Purposes of SSI Eligibility

A child under eighteen years of age is considered "disabled" for purposes of SSI eligibility if that child

> has a medically determinable physical or mental
> impairment, which results in marked and severe

functional limitations, and which can be expected to
result in death or which has lasted or can be expected
to last for a continuous period of not less than 12
months.

42 U.S.C. § 1382c(a)(3)(C)(I).

To determine whether a child claimant is disabled, the
Commissioner employs a three-step evaluation process.  The
Commissioner first determines whether the child is engaged in
substantial gainful activity;[2] if the child is so engaged, he is
not disabled.  Second, the Commissioner determines whether the
child has an impairment or combination of impairments that is
severe; if the child's impairment is not severe, he is not
disabled.  Finally, in step three, the Commissioner determines
whether the child's impairment meets, "medically equals," or
"functionally equals" the severity of an impairment listed in 20
C.F.R. Part 404, Subpart P, Appendix 1.  Under the regulations,
an impairment medically equals a listed impairment if it is at
least equal in severity and duration to the criteria of any
listed impairment.[3]  20 C.F.R. § 416.926(a).  An impairment

---

[2] Substantial gainful activity is defined as activity that
involves doing significant physical or mental activities done for
pay or profit.  Generally, activities like taking care of
oneself, household tasks, hobbies, therapy, school attendance,
club activities, or social programs are not considered to be
substantial gainful activity.  20 C.F.R. § 416.972.
[3] More specifically, medical equivalence exists if (1) the
findings related to an impairment are at least of equal medical
significance to the required criteria; (2) an impairment is not
described in the listings, but is of equal medical significance
to an analogous listing; or (3) a combination of impairments is
not described in the listings, but is of equal medical
significance to an analogous listing.  20 C.F.R. § 416.926(b).

"functionally equals" a listed impairment if the child has either "marked" limitations[4] in two of the following domains or "extreme" limitations[5] in one domain:

> (I) acquiring and using information;
> (ii) attending and completing tasks;
> (iii) interacting and relating with others;
> (iv) moving about and manipulating objects;
> (v) caring for yourself; and
> (vi) health and physical well-being

20 C.F.R. §§ 416.926a(b)(1), 416.926a(d).  If the child's impairment meets, medically equals, or functionally equals a listed impairment, he is disabled under the Act.  20 C.F.R. § 416.924.

**B. The ALJ's Decision**

Using the sequential evaluation process, the ALJ found that L.A. satisfied the requirements of step one because he had never engaged in substantial gainful activity since the alleged onset date.  (ALJ Opinion, R. at 18).  At step two, the ALJ found that L.A. was diagnosed with asthma, reflux esophagitis, speech and language delays, and Pervasive Developmental Disorder, which constituted a "severe combination of impairments" within the meaning of 20 C.F.R. § 416.924(c).  (Id.).  At step three,

---

[4] A "marked" limitation is defined as an impairment that "interferes seriously with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).

[5] An "extreme limitation," is defined as an impairment that "interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

however, the ALJ found that L.A.'s combination of impairments did
not "meet or medically equal the severity of any impairment
listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924,
416.925 and 416.926)" nor "functionally equal[] the listings (20
CFR 416.924(d) and 416.926(a))."  (Id.).  Accordingly, because
L.A.'s impairments did not satisfy step three, the ALJ found that
he is not disabled and, therefore, not entitled to benefits.
(Id. at 25).

### C. Plaintiff's Appeal

Plaintiff makes four arguments challenging the ALJ's
determination that L.A. is not disabled: 1) the ALJ improperly
discounted Plaintiff's testimony as to L.A.'s functional
limitations; 2) the ALJ failed to give sufficient weight to
L.A.'s treating medical experts; 3) the ALJ erred by not
obtaining an updated medical report; and 4) the ALJ wrongly
concluded that L.A.'s condition did not meet, medically equal, or
functionally equal any of the listed impairments.

### 1. Credibility Determination of Plaintiff's Testimony

Plaintiff contends that the ALJ failed to articulate a
legally sufficient rationale for disregarding her testimony
concerning the severity and intensity of L.A.'s pain and
limitations.  (Pl. Br. at 5-15).  Specifically, Plaintiff argues
that the ALJ did not properly apply the credibility factors as

15

set forth in 20 C.F.R. § 416.929, Social Security Ruling ("SSR") 96-7p, or the standard employed by the Third Circuit.

The Social Security Administration regulations state that a claimant's testimony is entitled to considerable weight when it is consistent with and supported by <u>objective clinical evidence</u> demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms.  20 C.F.R. § 416.929(a).  If the claimant's testimony concerning the intensity, persistence, or functional limitations is not fully supported by clinical evidence, the ALJ must consider additional factors, including:

> (1) daily activities;
> (2) location, duration, frequency, and intensity of any symptoms;
> (3) precipitating and aggregating factors;
> (4) type, dosage, effectiveness, and side effects of any medications taken to relieve symptoms;
> (5) other treatment received; and
> (6) any other measures taken to relieve symptoms.

20 C.F.R. § 416.929(c)(3)(I)-(vi).  Overall, credibility determinations as to the claimant's pain should be based on the entire case record, including objective medical evidence, the individual's own statements, statements and other information provided by physicians or psychologists, and any other relevant evidence in the case record.  SSR 96-7p, 1996 WL 374186, at *1.[6]

---

[6] Although Social Security Ruling 96-7p is related to claims of adults, the Social Security Administration noted that "the same basic principles with regard to determining whether statements about symptoms are credible also apply to claims of individuals under age 18 claiming disability benefits under title XVI."  SSR

In addition to the criteria set forth in the regulations, the Third Circuit has developed the following guidelines for evaluating subjective pain:

> (1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain may support a claim for disability benefits and may be disabling; (3) that where such complaints are supported by medical evidence, they should be given great weight; and (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount the claimant's pain without contrary medical evidence.

Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir.1984) (citing Smith v. Califano, 637 F.2d 968, 972 (3d Cir.1981); Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir.1971); Taybron v. Harris, 667 F.2d 412, 415 n. 6)) (internal citations and quotations omitted).

Credibility determinations are generally within the province of the ALJ.  Courts typically afford great deference to the ALJ's credibility decisions, as he is the trier of fact on these issues and "is in the best position to evaluate the demeanor and attitude of the plaintiff." Schoengarth v. Barnhart, 416 F. Supp. 2d 260, 268 (D. Del. 2006); see also Wilson v. Apfel, 1999 WL 993723 at *3 (E.D. Pa. 1999) ("the credibility determinations of the ALJ are to be given great deference").  However, while the ALJ is free to accept or reject a plaintiff's subjective testimony, he must explain the reasons for his credibility

96-7p, 1996 WL 374186, at *9 n.1.

determinations and support his conclusions with medical evidence in the record. Schonewolf v. Callahan, 972 F. Supp. 277, 286 (D.N.J. 1997); Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990); Grandillo v. Barnhart, 105 Fed. Appx. 415, 418 (3d Cir. 2004). The Third Circuit has consistently emphasized the need for specificity, holding that the ALJ must indicate in his decision which evidence has been rejected and which has been relied on as the basis for his finding. See Cotter v. Harris, 642 F.2d 700, 705-06 (3d Cir. 1981); see also SSR 96-7P, 1996 WL 374186, at *4 ("[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision"). Such explanation allows a reviewing court to assess whether "significant probative evidence was not credited or [was] simply ignored." Cotter, 642 F.2d at 705.

In support of L.A.'s claim for SSI eligibility, Plaintiff provided extensive testimony regarding her son's functional limitations. She described his current condition, noting that he is bothered "a great deal" by his reflux, he has pain in his legs and back, and he has difficultly sleeping. (R. at 616, 617, 630). She estimated that he wakes up three to four times per night, often crying and coughing due to congestion and leg cramping. (Id.). Plaintiff testified that she must frequently "give him therapy" and Tylenol to alleviate this pain. (R. at 617, 630). Furthermore, Plaintiff stated that she struggles to

18

control L.A.'s hyperactivity.  This condition affects the entire family, as he is frequently aggressive towards his siblings and she must devote her entire day to disciplining him.  (R. at 628-629).

Despite Plaintiff's lengthy and detailed testimony, the ALJ summarily concluded that "the statements concerning the intensity, duration, and limiting effects of the claimant's symptoms are not entirely credible."  (R. at 18).  Nowhere in his opinion did the ALJ explain why he found Plaintiff's testimony "not entirely credible."  While the ALJ may discount her testimony if he found it unreliable, he must explain why he came to that conclusion.  Given the lack of any explanation, this Court cannot conduct a meaningful review of the ALJ's credibility determination.

The Commissioner argues that "the ALJ's credibility finding is reasonably supported by substantial evidence and should not be disturbed," (Def. Br. 5) citing Drake v. Barnhart, 2005 WL 3078195 (E.D. Pa. 2005).  However, this Court finds that case distinguishable from this appeal.  In Drake, the court found that the ALJ had specifically "identified which portions of the record he considered persuasive and which he did not."  Drake, 2005 WL 3078195 at *6.  This level of specificity allowed the court to determine that the ALJ's reasoning was adequate.  Here, the ALJ

cited nothing in the record to explain why he found Plaintiff's testimony not credible.

Additionally, the Commissioner attempts to explain the ALJ's credibility determination himself by delving into the record and citing specific evidence that supports the ALJ's decision. However, the Third Circuit has made clear that when the ALJ fails to consider all of the relevant and probative evidence, a District Court cannot "rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ." Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001).  Such an inquiry "runs counter to the teaching of SEC v. Chenery Corporation, 318 U.S. 80, [87] that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'"  Id.

In sum, while "[t]here is no requirement that the ALJ discuss in [his] opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004), the ALJ's decision must be sufficiently explanatory to allow the Court to determine whether there is substantial evidence to support it.  Burnett v. Commissioner, 220 F.3d 112, 120 (3d Cir. 2000); Hernandez v. Comm'r of Soc. Sec., 89 Fed. Appx. 771, 774 (3d Cir. 2004).  Upon review of the ALJ's decision, this Court finds that the ALJ failed to explain his determination that

20

Plaintiff's testimony was not credible.  On remand, the ALJ should address Plaintiff's testimony regarding the intensity of L.A.'s pain and explain his reasons for discounting it.

### 2. **Weight to Plaintiff's Treating Medical Expert**

Plaintiff contends that the ALJ failed to give sufficient weight to L.A.'s treating medical experts.  Specifically, she alleges that the ALJ improperly afforded controlling weight to the conclusions of the Social Security Administration ("SSA") physician.

The Third Circuit has consistently held that treating physicians should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Opinions of non-examining physicians have less probative value. Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986); Payton v. Barnhart, 416 F. Supp. 2d 385, 389 (E.D. Pa. 2006).  Thus, a court must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all.  Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).

When the opinions of various physicians conflict, the ALJ may determine which opinion to credit.  Jones v. Sullivan, 954 F.2d 125 (3d Cir. 1991).  An ALJ may reject a treating

21

physician's opinion on the basis of contradictory medical evidence, see Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988), and may afford a medical opinion more or less weight depending on the supporting explanation provided.  See Mason, 994 F.2d at 1065 (stating that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best" and where "reports are unaccompanied by thorough written reports, their reliability is suspect").  However, an ALJ may not reject a treating physician's findings "unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected."  Id. at 1067.  Accordingly, the ALJ "cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

In his opinion, the ALJ stated that he "agree[d] with the [SSA] physician's advisory opinion dated October 27, 2003, that the child has no marked limitations." (ALJ Opinion, R. at 20).  Plaintiff complains that the treating doctor's opinions, "were not even cited in the Opinion" and "should have been given more weight than that of a one-time Consultative Evaluator." (Pl. Br. 17).  Contrary to Plaintiff's assertion, the ALJ did refer to some of L.A.'s treating physicians.  For example, the ALJ discussed the treatment notes from L.A.'s otolaryngologist and psychotherapist.  (ALJ Opinion, R. at 19).  However, the ALJ

offered no connection between his consideration of these opinions and his conclusion that L.A.'s conditions did not meet, medically equal, or functionally equal the listed impairments. Furthermore, of the five exhibits the ALJ cited to support his conclusion that L.A. "has no marked limitations[,]" only one contains records from a treating physician.[7]

Given the ALJ's limited reference to the treating physicians' opinions and the dearth of explanation regarding his conclusion, this Court cannot determine whether the ALJ afforded the treating physicians' opinions sufficient weight, as required by the Administration's regulations.  On remand, the ALJ should explain how he weighed the relevant medical evidence - specifically, his reliance on the conclusions of the SSA physicians relative to the conclusions of L.A.'s treating physicians.  See Dobrowolsky v. Califano, 606 F.2d 403, 406-07 (3d Cir. 1979) ("[t]his Court has repeatedly emphasized that the special nature of proceedings for disability benefits dictates care on the part of the agency in developing an administrative record and in explicitly weighing all evidence").

---

[7] The five exhibits cited by the ALJ are: Ex. 27F (a State Agency Review Opinion); Exs. 29F, 30F, 31F (components of a pre-school evaluation completed in preparation for the 2003-04 IEP); and Ex. 38F (treatment notes of Dr. Vatsala Ramprasad, L.A.'s treating Pediatric pulmonologist in late 2004).

23

### 3. Failure to Obtain an Updated Medical Report

Plaintiff contends that the expert reports in the record were from 2003 and, thus, did not consider L.A.'s medical records from 2004-2006. Specifically, Plaintiff claims that there are 22 exhibits that post-date these 2003 expert reports, "including records from Nueva Vida Behavioral Health dated January 12, 2005 through May 18, 2005 and March 31, 2006, which document the more recent diagnosis of pervasive developmental disorder..." (Pl. Br. at 16). Thus, Plaintiff argues, the ALJ should have obtained an updated medical expert report or called an expert to testify at the hearing.

Plaintiff mischaracterizes the SSR in asserting that "the ALJ is <u>required</u> to obtain an updated medical opinion," (Pl. Br. 15) (emphasis added). SSR 96-6P provides that,

> an [ALJ] ... must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> ...
>
> When additional medical evidence is received that <u>in the opinion of the [ALJ]</u> ... may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6P, 1996 WL 374180, at *3-4 (emphasis added). Contrary to Plaintiff's argument, this Court does not read this provision as <u>requiring</u> the ALJ to obtain an updated medical report in all cases. Rather, the language provides that an

24

updated medical report is only necessary when the ALJ determines, in his opinion, that an updated report might change the SSA physician's finding.  As the Third Circuit has explained, the Social Security regulations and rulings "accord an ALJ broad discretion in determining whether to consult with a medical expert..."  Hardee v. Comm. of Soc. Sec., 188 Fed. Appx. 127, 129 (3d Cir. 2006).  Thus, unless the ALJ believed that an updated expert report would change the outcome, he was not required to obtain such report.

Moreover, Plaintiff failed to notice that the 2003 SSA physician's expert report was actually confirmed in 2005. Indeed, the record shows that a different SSA physician, Dr. J. Randall, independently reviewed the medical evidence in 2005[8] and affirmed the prior SSA physicians' assessments of June 25, 2003 and October 27, 2003.  (R. at 352).  Thus, the expert report in the record was actually from 2005, not 2003, and, therefore, it included L.A.'s 2004 medical records.  The only medical records that could not be considered in the 2005 expert report are the records from Nueva Vida Behavioral Health, dated January 12, 2005 through May 18, 2005 and March 31, 2006.  However, these records did not go unnoticed, as the ALJ specifically cited a report from Nueva Vida:

_____

[8] Dr. Randall reviewed the record on either January 7, 2005 or July 7, 2005 - the exact date cannot be determined, as the handwriting is difficult to read.  (R. at 352).

25

> A report from the Behavioral Health Center shows that the
> child first visited the center on May 10, 2004.  He is being
> treated for pervasive developmental disorder and is
> prescribed Adderal [sic], 25 mg.  It was reported that this
> condition may affect his daily activities.

(ALJ Opinion, R. at 19).  Thus, the ALJ took note of L.A.'s

Pervasive Developmental Disorder, as well as his treatment for

this condition.

In sum, the record included an updated medical expert report

dated 2005, which considered the vast majority of L.A.'s recent

medical records.  The ALJ determined that no other expert report

was necessary.  Given the ALJ's broad discretion concerning the

use of medical expert reports, this Court will defer to the

judgment of the ALJ.

**4. ALJ's Finding that Plaintiff's Impairments Did Not Meet,
Medically Equal, of Functionally Equal the Listing(s)**

Finally, Plaintiff contends that the ALJ erred in

determining that L.A.'s impairments did not meet, medically

equal, or functionally equal any of the impairments listed in the

Act.  Specifically, she argues that L.A.'s impairments meet,

medically equal, or functionally equal at least one of the

following:  103.02F Chronic Pulmonary Insufficiency, 103.02B

Asthma, 105.00 Digestive System, 112.10(A)(2) and (B) Autistic

Disorder and other Pervasive Developmental Disorders, and

112.02(A)(10) and (B)(2)(a) and (d) Organic Mental Disorders.

(Pl. Br. at 19-20).

26

As discussed above, the ALJ must consider all of the evidence in the record and explain why he chooses to disregard any evidence. Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994). The ALJ has a duty to "explain his findings at step three, including an analysis of whether and why [a claimant's impairments] are or are not equivalent in severity to one of the listed impairments." Burnett v. Commissioner, 220 F.3d 112, 120 (3d Cir. 2000).[9] While the ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), a bare conclusory statement that an impairment did not match or is not equivalent to a listed impairment is insufficient. Burnett, 220 F.3d at 120. The ALJ must ensure that there is "sufficient explanation to provide meaningful review of the step three determination." Jones, 364 F.3d at 505  (emphasis added).

In determining that L.A. had no disability, the ALJ gave only one sentence to each of his findings:

> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments ...

> The claimant does not have an impairment or combination that functionally equals the listings ...

(ALJ Opinion, R. at 18). Similarly, in his discussion of the six domains within the "functional equivalence" analysis, the ALJ

_____

[9] Although Burnett reviewed an application for benefits under Title II of the Act as opposed to Title XVI, the third step of the analysis is the same under both provisions.

27

summarily concluded that L.A. had either "less than marked limitation" or "no limitation" in each domain.  (ALJ Opinion, R. at 20-24).  He offered no explanation as to any of these conclusions.  Because the ALJ did not explain his conclusions nor indicate which opinions he relied on in making those conclusions, this Court is unable to conduct meaningful judicial review of the ALJ's determination.

Furthermore, although the ALJ found that L.A.'s asthma and reflux esophagitis were severe, there is no evidence to suggest that he considered these impairments in step three of the analysis.  Nor did the ALJ discuss Plaintiff's testimony as to L.A.'s subjective pain.  Accordingly, this Court "cannot tell if significant prohibitive evidence was not credited or simply ignored." Burnettt, 220 F.3d at 121 (citing Cotter v. Harris, 642 F.2d 700, 705).

In an attempt to remedy the ALJ's sparse evaluation, the Commissioner again delves into the record and points out the evidence that supports the ALJ's determination but is not cited in the ALJ's opinion.  (Def. Br. at 9-12).  However, the law is clear that the Commissioner's thorough examination cannot compensate for the ALJ's lack of analysis.  Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001).

Thus, without knowing whether and how the ALJ considered this potentially probative evidence, this Court cannot determine

28

whether the ALJ's conclusion was based on substantial evidence. On remand, the ALJ should explain his conclusion that Plaintiff's severe combination of impairments failed to meet or functionally equal the listings.

## V.  CONCLUSION

For the aforementioned reasons, this Court cannot determine whether the ALJ's decision denying L.A.'s disability status was made with proper consideration of all the evidence in the record. To the extent the ALJ did consider all the evidence but chose to discount it, the ALJ must offer explanations for such determinations.  Therefore, this case is remanded to the ALJ for reconsideration of the evidence as discussed in this Opinion.  An appropriate Order will issue this date.

Dated:   June 27, 2008          s/Renée Marie Bumb
                                RENÉE MARIE BUMB
                                UNITED STATES DISTRICT JUDGE